## Case No. 12,150.

### RUSSELL v. ASHLEY.

[Hempst. 546.] [1]

Circuit Court, D. Arkansas. May, 1847.

DEPOSITION—WITNESS MOVING INTO JURISDICTION AFTER DEPOSITION TAKEN—COSTS.

1. The deposition of a witness, residing more than one hundred miles from the place of trial, may be taken de bene esse in or out of the district, in suits at common law, under the judiciary act of 1789 (1 Stat. 88).

2. After it is taken, and before trial, if the witness moves within one hundred miles, still the deposition may be read, unless the party objecting, shall show that fact, and that it was known to the opposite party, in time to have had the witness subpoenaed. [Patapsco Ins. Co. v. Southgate] 5 Pet. [30 U. S.] 613.

[Cited in Merrill v. Dawson, Case No. 9,469; Whitford v. Clark Co., 119 U. S. 525, 7 Sup. Ct. 308.]

3. A witness residing more than one hundred miles from the place of trial, is beyond the coercive power of a subpoena, whether he resides in or out of the district; and the party who issues a subpoena for him, must pay the costs attending it, and cannot throw them on the opposite party.

4. The officer taking depositions should certify each item of costs, and transmit the evidence of services rendered, so that the court may see that the services have been performed, and that the charges are such as the law allows.

5. Costs retaxed, on the principle above stated, and errors ascertained.

6. Process act of 1828, law of Arkansas as to subpoenas; those addressed to the marshal adopted by usage of the court.

7. Mode of taking depositions under 30th section of act of 1789; subpoenaing witnesses, and rules of court, explained in note.

[This was an action by William Russell against Chester Ashley. Heard on a motion for retaxation of costs.]

Daniel Ringo and F. W. Trapnall, for plaintiff.

Chester Ashley, in pro. per.

---

[1] [Reported by Samuel H. Hempstead, Esq.]
21 FED. CAS.—3

JOHNSON, District Judge. The defendant objects to the costs taxed against him upon the subpoenas, and the service thereof upon witnesses in the case, upon the ground that the subpoenas are void on their face, being directed to the marshal instead of to the witnesses themselves. By the act of congress of May 19, 1828 (4 Stat. 278), to regulate the processes in the courts of the United States, and made applicable to Arkansas by the act of August 1, 1842 (5 Stat. 499), it is enacted in substance, that the forms of mesne and final process, except the style, shall be the same in the courts of the United States, as in the highest state courts of original and general jurisdiction; subject, however, to such alterations and additions, from time to time, as the courts of the United States shall, in their discretion, deem expedient. The forms of subpoenas, as well as every other process, then, must conform to those used in the circuit courts of this state, unless this court has deemed it expedient, under the power vested in it by congress, to alter the same. A subpoena for a witness, by the laws of this state, is to be directed to the person to be summoned, and not to an officer commanding him to summon the witness. Rev. St. p. 774. The subpoenas which have issued from this court, since its first organization, have uniformly been directed to the marshal of the district, and not to the witnesses themselves. Although this form of subpoena has not been prescribed by an express rule of this court, yet it has received its sanction ever since its creation, and the legality of this form has never been called in question until the present time. The power of this court to adopt the form of a subpoena cannot be disputed, for it is expressly conferred by act of congress. The question then is, Has this court adopted this form? Uniform practice in the use of this form, from the origin of the court to the present time, would seem to be sufficient to establish the fact that the present form of the subpoena had been adopted. Uniform practice, acquiesced in by the bar, and never contested by any one, for a period of ten years, as firmly establishes that practice and makes it the act of the court, as if it had been prescribed by the written rules of the court. The subpoenas were not void. But the variance between the subpoena provided by the state law, and that used in this court, is in form only. They are substantially the same. In each of them the witness is commanded to appear at court and testify, and each may be served by an officer of the court or by a private person, the latter making oath to the service. They are, in fact, precisely the same, except in form. But even if they were substantially different, it is clear that the court has the power to alter the form of the writ; and the court in effect has exercised that power in the manner alluded to.

The defendant objects to the item in the taxation of costs against him for the subpoena and its service on William F. Moore, a

witness who resided more than one hundred miles from this place, and whose deposition the plaintiff had taken before the service of the subpœna on him. This objection is well taken. The deposition of a witness residing more than one hundred miles from the place of trial, is to be taken, not de bene esse, but in chief, and he cannot charge the defendant with the costs of taking his deposition, and also the costs of summoning him as a witness. Having used the deposition, he cannot charge the defendant with having him summoned to appear and give evidence orally in court. This item is disallowed. He also objects to the costs incident to suing out two commissions for the purpose of taking Moore's deposition. This objection is also well founded. I can perceive no necessity for more than one commission. These costs are disallowed. He also objects to all the costs incident to the taking the rejected deposition of Moore, including the fees of the clerk of this court. I deem this objection well taken, and these costs are disallowed as against the defendant. The certificate of the justice of the peace of the costs of taking depositions before him, is to be regarded so far only as it states legal items of costs incurred before him. All beyond that is disallowed. Let the costs be retaxed in accordance with this opinion. Ordered accordingly.

The plaintiff moved for a reconsideration.

JOHNSON, District Judge. Upon reconsidering the opinion previously given in this case, I am satisfied I erred in stating "that the deposition of a witness, residing more than one hundred miles from the place of trial, is taken, not de bene esse, but in chief." In a suit at common law, the deposition of a witness so residing, is taken de bene esse, or conditionally; the only condition, however, being, that the witness shall remove to a place less than one hundred miles to the place of trial, before the deposition is offered to be read; and, unless this shall be shown by the party objecting, the deposition may be read at the trial, without the service of a subpœna upon the witness. Merrill v. Dawson [Case No. 9,469]. Indeed, a witness residing more than one hundred miles from the place of trial, is beyond the coercive power of a subpœna. The party may take his deposition, but cannot compel him to attend at court, and give oral testimony. This had been expressly held by the supreme court of the United States, in the case of Patapsco Ins. Co. v. Southgate, 5 Pet. [30 U. S.] 615. The party desiring his testimony has no right to issue a subpœna to coerce his attendance, and if he does he must pay the costs incident thereto, and not throw them upon the other party.

One other principle stated in the former opinion requires explanation. It relates to the costs of taking depositions. It is the duty of the person before whom depositions are taken, to state and certify each item of costs before him, that the court may see that the charges are such as the law allows, and that the services have been performed. In this case, the justice before whom the depositions were taken has not sent up a statement of the items of costs before him, but has certified them as follows:—"Justice's fees, $3.17; constable's, $2.18; witnesses', $2.50." This certificate is inadmissible to prove the amount of costs incurred before him. He should have stated the items of costs, and transmitted the evidence of the services rendered, that this court might see that the charges were legal, and such as the law allows. This certificate, however, is evidence that he claimed the fees allowed him by law. It is proper, then, to look at the services rendered by the justice to ascertain the amount of fees to which he was entitled; and in doing so, it appears he was entitled to the sum of $3.17 for taking the five depositions. Rev. St. p. 395. It is contended that the fees to the constable of $2.18, and to the witnesses of fifty cents each, ought to be allowed. There is no proof that the constable rendered any service; nor is there any proof that the witnesses were summoned to testify before the justice, and that they claimed to be paid therefor, except the statement of the justice, of $2.18 as constable's fees, and $2.50 as witnesses' fees. This is not sufficient. He should have certified the items of the services performed by the constable, and that the witnesses were summoned before him to testify, and that they claimed to be paid for their attendance. Governed by the principles stated in this opinion, and looking into the taxation of the costs, I find that the defendant has been illegally taxed with costs, to the amount of eighteen dollars and forty-six cents, which he has paid upon the execution against him. The plaintiff must refund and pay to the defendant that sum, together with the costs of the motion for a retaxation. Ordered accordingly.

NOTE. The mode of obtaining proof by depositions in suits in equity and at law, in the courts of the United States, depends upon various enactments of congress, not altogether clear and explicit. In the common law courts of England, the practice was this: When a material witness resided abroad, or was going abroad, or from sickness, age, or infirmity, was unable to attend the trial, the party needing his testimony might move the court in term time, or apply to a judge in vacation, for an order or rule to examine him on interrogatories de bene esse before any of the judges of the court, if he resided in London, or if in the country or abroad, before commissioners specially appointed. The rule or order, however, for this purpose, could not be obtained, unless by the consent of the opposite party; and hence, if such consent was withheld, the common law courts possessed no power to permit the testimony to be taken. The most that the court, in the exercise of a sound discretion, could do, was to postpone the trial for a reasonable time, to afford the party an opportunity of applying to the court of chancery for a commission for that purpose. 2 Tidd, Prac. 740; 1 Bos. & P. 210; 3 Bl. Comm. 383; 1 Phil. Ev. 16. When con-

sent was given and a deposition taken, it was considered as being taken de bene esse, or conditionally, that is, that the deposition might be read at the trial by first showing reasonable exertions to obtain the personal attendance of the witness. The death of the witness, inability to find him after diligent search; residence or absence beyond the jurisdiction of the court; incapacity to testify, as where he had become a lunatic, or infamous, or interested; or inability to attend at the trial, from age, sickness, or infirmity, were among the instances which authorized the reading of the deposition as testimony. 1 Starkie, Ev. 264 et seq., and authorities there cited; 2 Tidd, Prac. 741. When consent was withheld, the party was then obliged to resort to a court of chancery for a commission to take the deposition of the witness. It was a proceeding in which equity had a general jurisdiction to prevent a failure of justice. It was a regular bill, praying for a commission to examine witnesses in aid of a trial at law; and it was necessary to show the pendency of the action, the materiality of the testimony, and due diligence and inability to procure it by any of the means which the common law court was competent to afford. The commission was not grantable of course; but rested in the sound discretion of the chancellor, in view of all the circumstances of the case. And it was competent for the court, by injunction, to stay proceedings at law, to afford time to obtain the testimony. Eden, Inj. 112. But that circuitous mode has been shortened in England by statute 1 Wm. IV. c. 22, § 4; and now the common law courts are authorized, upon the application of either party, to issue a commission for the examination of witnesses at places out of their jurisdiction. But the jurisdiction of courts of equity is not taken away, but still exists. 2 Daniell, Ch. Prac. 1097; 4 Sim. 546.

The principal provision, as to taking depositions in the courts of the United States, is to be found in the judiciary act of 1789 [1 Stat. 88] § 30, and is as follows: "That the mode of proof, by oral testimony and examination of witnesses in open court, shall be the same in all the courts of the United States, as well in the trial of causes in equity and of admiralty and maritime jurisdiction, as of actions at common law. And when the testimony of any person shall be necessary in any civil cause depending in any district in any court of the United States, who shall live at a greater distance from the place of trial than one hundred miles, or is bound on a voyage to sea, or is about to go out of the United States, or out of such district, and to a greater distance from the place of trial than as aforesaid, before the time of trial, or is ancient or very infirm, the deposition of such person may be taken de bene esse before any justice or judge of any of the courts of the United States, or before any chancellor, justice, or judge of a supreme or superior court, mayor or chief magistrate of a city, or judge of a county court, or court of common pleas of any of the United States, not being of counsel or attorney to either of the parties, or interested in the event of the cause, provided that a notification from the magistrate before whom the deposition is to be taken to the adverse party to be present at the taking of the same, and to put interrogatories if he think fit, be first made out and served on the adverse party, or his attorney, as either may be nearest, if either is within one hundred miles of the place of such capture, allowing time for their attendance after notified, not less than at the rate of one day, Sundays exclusive, for every twenty miles travel. And in causes of admiralty and maritime jurisdiction, or other cases when a libel shall be filed, in which an adverse party is not named, and depositions of persons circumstanced as aforesaid, shall be taken before a claim put in, the like notification as aforesaid shall be given to the person having the agency or possession of the property libelled at the time of the capture or seizure of the same, if known to the libellant. And every person deposing as aforesaid shall be carefully examined and cautioned and sworn or affirmed to testify the whole truth, and shall subscribe the testimony by him or her given, after the same shall be reduced to writing, which shall be done only by the magistrate taking the deposition, or by the deponent in his presence. And the depositions so taken shall be retained by such magistrate until he deliver the same with his own hand into the court for which they were taken, or until they shall, together with a certificate of the reasons as aforesaid of their being taken, and of the notice, if any given to the adverse party, be by him the said magistrate sealed up and directed to such court, and remain under his seal until opened in court. And any person may be compelled to appear and depose as aforesaid, in the same manner as to appear and testify in court. And in the trial of any cause of admiralty or maritime jurisdiction in a district court, the decree in which may be appealed from, if either party shall suggest to and satisfy the court that probably it will not be in his power to produce the witnesses there testifying before the circuit court, should an appeal be had, and shall move that their testimony be taken down in writing, it shall be so done by the clerk of the court. And if an appeal be had, such testimony may be used in the trial of the same, if it shall appear to the satisfaction of the court which shall try the appeal that the witnesses are then dead or gone out of the United States, or to a greater distance than as aforesaid from the place where the court is sitting, or that by reason of age, sickness, bodily infirmity, or imprisonment, they are unable to travel and appear at court; but not otherwise. And unless the same shall be made to appear on the trial of any cause, with respect to witnesses whose depositions may have been taken therein, such depositions shall not be admitted or used in the cause. Provided, that nothing herein shall be construed to prevent any court of the United States from granting a dedimus potestatem to prevent a failure or delay of justice, which power they shall severally possess; nor to extend to depositions taken in perpetuam rei memoriam, which if they relate to matters that may be cognizable in any court of the United States, a circuit court, on application thereto made as a court of equity, may, according to the usages in chancery, direct to be taken." 1 Stat. 88–90. The commissioners appointed under the act of congress of February 12, 1812 (2 Stat. 679), by the courts of the United States to take affidavits and acknowledgments of bail, were expressly authorized by the act of March 1, 1817 (3 Stat. 350), to take depositions under the foregoing section; and so they are to be added to the number of those competent to take depositions. Conk. Prac. 56, 253. Thus it will be seen that the 30th section of the judicial act of 1789 [supra] authorizes the deposition of a witness to be taken "who shall live at a greater distance from the place of trial than one hundred miles;" and this provision applies equally to the depositions of witnesses living within or without the district. [Patapsco Ins. Co. v. Southgate] 5 Pet. [30 U. S.] 616. Notice of time and place must be given to the opposite party, or his attorney, whichever may be nearest, provided either is within one hundred miles of the place where the testimony is to be taken, and after notification time is allowed for attendance, which is prescribed to be not less than at the rate of one day for every twenty miles travel, excluding Sundays. If neither the adverse party nor his attorney is within that distance, notice is not necessary; and if the deposition is in other respects regular, it is admissible as evidence. 1 Stat. 89.

The main feature in a deposition of this kind is the distant residence of the witness, and which is the reason of resorting to this mode of procuring testimony. The authority to take the written testimony of a witness is given for

the convenience of suitors; but as that authority is in derogation of the rules of the common law, it must be strictly pursued, and it is therefore necessary to show that the requisites of the law have been complied with before such testimony is admissible. The certificate of the officer who takes the deposition is good evidence of the facts therein stated; and if the facts necessary to bring a case within the provisions of the law are sufficiently disclosed in such certificate, the deposition is entitled to be read; but no presumption can be admitted to supply any defects in taking the deposition. Pettibone v. Derringer [Case No. 11,043]; U. S. v. Smith [Id. 16,332]; Jones v. Neale [Id. 7,483]; Bell v. Morrison, 1 Pet. [26 U. S.] 355, 356; Patapsco Ins. Co. v. Southgate, 5 Pet. [30 U. S.] 617. The witness must be sworn or affirmed to testify the whole truth, the testimony reduced to writing by the magistrate, or by the deponent in the presence of such magistrate, and then subscribed by the witness. It has accordingly been held, that a deposition reduced to writing by the witness himself, and formal in every respect, with the exception that the magistrate did not certify that the deposition was reduced to writing by the witness in the presence of the magistrate, was inadmissible; the court remarking, that where evidence is sought to be introduced contrary to the rules of the common law, something more than a mere presumption should exist that it was rightly taken, and that there ought to be direct proof that the requisitions of the statute have been fully complied with (Bell v. Morrison, 1 Pet. [26 U. S.] 356), which proof, as will be perceived from the same case, is properly made by the certificate of the magistrate taking the deposition (Conk. Prac. (2d Ed.) p. 255; U. S. v. Smith [supra]). The act of congress then proceeds to declare, that a deposition so taken shall be retained by the magistrate until he deliver the same with his own hand into the court for which it was taken, or shall, together with a certificate of the reasons of taking the same, and of the notice, if any was given to the adverse party, be by such magistrate sealed up and directed to such court, and remain under his seal until opened in court. 1 Stat. 89. The mode of transmission is not prescribed by the act; and it was doubtless intended to be left to the ordinary and usual means of conveyance resorted to in the business affairs of life. In practice, it is usual to employ the mail for that purpose; and perhaps it would be most prudent to do so where the mail facilities will allow it. In the treatise of Judge Conkling, it is, however, stated, that a suitable private agent may be employed. That is undoubtedly within the spirit and intention of the act of congress. Conk. Prac. (2d Ed.) 255. A deposition, therefore, may be transmitted by the mail, by a steamboat or vessel, or a private individual; for these are means of conveyance indiscriminately used in business transactions, and it is not to be supposed that congress intended to provide for a different or exclusive mode of transmission. If that had been the intention, the mode would have been specifically designated.

The deposition cannot be opened out of court, except by consent of parties; and if it is, it is a fatal objection to its admissibility, as was decided in the case of Beale v. Thompson, 8 Cranch [12 U. S.] 70; 3 Pet. Cond. R. 35.

A deposition taken on account of the residence of a witness more than one hundred miles from the place of trial, cannot be considered as taken de bene esse, according to the usual meaning of that term. The only contingency on which a deposition thus taken cannot become absolute, is where the witness moves within one hundred miles before trial, and that fact is known to the opposite party in time to subpoena him to testify. The onus of proving this rests on the party opposing the admission of the deposition. [Patapsco Ins. Co. v. Southgate] 5 Pet. [30 U. S.] 617. But in the other instances mentioned in the 30th section of the judicial

act, the party offering the deposition must show that the disability of the witness to attend personally still continues, the law presuming it temporary. Id. In Evans v. Eaton, 6 Wheat. [19 U. S.] 426, a deposition had been taken according to the state practice, instead of being taken pursuant to the provisions of the act of congress of 1789, and had been excluded. The supreme court, in passing upon this point, said: "It is not pretended that the deposition was admissible according to the positive rules of law, or the rules of the circuit court. No practice, however convenient, can give validity to depositions which are not taken according to law, or the rules of the circuit court, unless the parties expressly waive the objection, or by previous consent agree to have them taken and made evidence." Without pretending to determine the precise scope of power which is thus recognized in the circuit courts to adopt rules with regard to taking testimony, it is clear enough that it recognizes the power to adopt the state practice on that subject, by appropriate rules for that purpose. The exclusion of the deposition in that case was vindicated on the ground that it was not taken pursuant to any rule of court, nor the act of congress; thus admitting that if it had conformed to a rule of court, it would have been admissible. In Buddicum v. Kirk, 3 Cranch [7 U. S.] 293, Chief Justice Marshall says there are two modes of taking depositions under the act of congress. By the first, notice in certain cases is not necessary; but the forms prescribed must be strictly pursued. By a subsequent part of the same section, depositions may be taken by dedimus potestatem, according to the common usage. Of the deposition in that case, which was taken by dedimus potestatem in Virginia, he says: "The laws of Virginia are to be referred to on the subject of notice. Those laws do not authorize notice to an attorney at law. The word attorney in the act of assembly means attorney in fact." This case shows satisfactorily the meaning that is to be attached to the mode of taking testimony by dedimus potestatem, according to common usage. The phrase, "common usage," cannot refer to any common law usage or custom, because the taking of testimony in writing, so far from being a common law right, depends upon statutory provisions. It must necessarily refer to state usage, sanctioned by statute law, pointing out a particular mode of taking testimony. And accordingly, in the case last cited, the then chief justice proceeded to determine the validity of a notice according to the law of the state of Virginia, where the deposition was taken, and to give a construction to the state law with regard to the point of notice.

By referring to the rules of the district court for the Northern district of New York, it will be perceived that commissions to take the examination of witnesses resident without the district might issue in the manner and subject to the regulations, so far as the same were applicable, mutatis mutandis, prescribed by the Revised Statutes of New York (Conk. Prac. Append. p. 540); and it is likely that most if not all the courts of the United States have a rule of the like character, adopting the state practice as to taking depositions. The circumstances under which a dedimus potestatem will be issued, and the mode of obtaining, executing, and returning it, in the several districts, depend upon the laws and practice of the several states, and the rules of the several courts of the United States. Conk. Prac. 258; [Buddicum v. Kirk] 3 Cranch [7 U. S.] 293. On the 20th June, 1839, the following rule was adopted by the circuit court of the United States for the district of Arkansas: "13. It shall be lawful for the clerk of this court, in vacation, to make and enter rules, and issue commissions for taking the depositions of witnesses, to be read as evidence in any suit pending, or which may hereafter be pending in this court, upon the application of either party interested." And on the 19th July,

1841, adopted the following additional rule: "16. Ordered, that from this time, either party to any suit pending in this court shall be at liberty to take depositions, either in the manner prescribed by the laws of this state, or in conformity to the several acts of congress in that regard, as well before as after issue joined in such suit; and depositions taken at any time after suit commenced, either under the laws of the United States, or by rule entered in open court, or in vacation, may be used on the penal trial or hearing of such suit, in the same manner as though such depositions had been taken after issue joined." The law of Arkansas. as to taking depositions, will be found in the Digest, pp. 431–435, c. 55. The forms for taking depositions and giving notices, where notice is necessary under the 30th section of the judicial act, will be found in Conk. Prac. Append. pp. 571–574; also the form of a dedimus potestatem, page 561; and the form of subpœna to compel attendance of witnesses before commissioners, p. 562. By the act of March 2, 1793 (1 Stat. 335), subpœnas for witnesses may run to all places in or out of the district, not more than one hundred miles distant from the place of holding the court, at which the attendance of the witness is required. [Sergeant's Lessee v. Biddle] 4 Wheat. [17 U. S.] 511. And by an act of congress of January 24, 1827, "to provide for taking evidence in the courts of the United States in certain cases" (4 Stat. 197), provision is made for issuing subpœnas, and subpœnas duces tecum, for witnesses to appear and testify before commissioners, and punishing witnesses for disobedience. But they are not required to go out of the county where they reside, nor more than forty miles from their residences, for that purpose. And they cannot be punished for contempt, unless their fees for going to and returning from, and one day's attendance at the place of examination, shall be paid or tendered at the time of serving the subpœnas.

The act of August 23, 1842 (5 Stat. 517, 518), provides as follows:—

"Sec. 5. That the district courts, as courts of admiralty, and the circuit courts, as courts of equity, shall be deemed always open for the purpose of filing libels, bills, petitions, answers, pleas, and other pleadings, for issuing and returning mesne and final process and commissions, and for making and directing all interlocutory motions, orders, rules, and other proceedings whatever, preparatory to the hearing of all causes pending therein upon the merits. And it shall be competent for any judge of the court, upon reasonable notice to the parties in the clerk's office, or at chambers, and in vacation as well as in term, to make and direct, and award all such process, commissions, and interlocutory orders, rules, and proceedings, whenever the same are not grantable of course, according to the rules and practice of the court.

"Sec. 6. That the supreme court shall have full power and authority, from time to time, to prescribe and regulate and alter the forms of writs and other process to be used and issued in the district and circuit courts of the United States, and the forms and modes of framing and filing libels, bills, answers, and other proceedings and pleadings in suits at common law or in admiralty, and in equity, pending in said courts; and also the forms and modes of taking and obtaining evidence, and of obtaining discovery, and generally the forms and modes of proceeding to obtain relief, and the forms and modes of drawing up, entering, and enrolling decrees; and the forms and modes of proceeding before trustees appointed by the court, and generally to regulate the whole practice of the said courts, so as to prevent delays, and to promote brevity and succinctness in all pleadings and proceedings therein, and to abolish all unnecessary costs and expenses in any suit therein."

Under this authority, the supreme court, on the 2d of March, 1842, promulgated "rules of practice in suits in equity in the circuit court," which took effect on the 1st of August, 1842.

The following relate to testimony in equity causes:—

"67. After the cause is at issue, commissions to take testimony may be taken out in vacation as well as in term, jointly by both parties, or severally by either party, upon interrogatories filed by the party taking out the same, in the clerk's office, ten days' notice thereof being given to the adverse party to file cross-interrogatories before the issuing of the commission; and if no cross-interrogatories are filed at the expiration of the time, the commission may issue ex parte. In all cases the commissioner or commissioners shall be named by the court, or by a judge thereof. If the parties shall so agree, the testimony may be taken upon oral interrogatories by the parties or their agents, without filing any written interrogatories.

"68. Testimony may also be taken in the cause, after it is at issue, by deposition, according to the acts of congress. But in such case, if no notice is given to the adverse party of the time and place of taking the deposition, he shall, upon motion and affidavit of the fact, be entitled to a cross-examination of the witness, either under a commission or by a new deposition, taken under the acts of congress, if a court or a judge thereof shall, under all the circumstances, deem it reasonable."

"70. After any bill filed, and before the defendant hath answered the same, upon affidavit made that any of the plaintiff's witnesses are aged or infirm, or going out of the country, or that any of them is a single witness to a material fact, the clerk of the court shall as of course, upon the application of the plaintiff, issue a commission to such commissioner or commissioners, as a judge of the court may direct, to take the examination of such witness or witnesses de bene esse, upon giving due notice to the adverse party of the time and place of taking his testimony."

"78. Witnesses who live within the district may, upon due notice to the opposite party, be summoned to appear before the commissioner appointed to take testimony, or before a master or examiner appointed in any cause, by subpœna in the usual form, which may be issued by the clerk in blank, and filled up by the party praying the same, or by the commissioner, master, or examiner, requiring the attendance of the witnesses at the time and place specified, who shall be allowed for attendance the same compensation as for attendance in court; and if any witness shall refuse to appear, or to give evidence, it shall be deemed a contempt of court, which being certified to the clerk's office by the commissioner, master, or examiner, an attachment may issue thereupon, by order of the court, or of any judge thereof, in the same manner as if the contempt were for not attending, or for refusing to give testimony in court. But nothing herein contained shall prevent the examination of witnesses vivâ voce, when produced in open court, if the court shall in its discretion deem it advisable." These rules sufficiently indicate the mode and manner of taking testimony in suits in equity in the courts of the United States, and need no comment.